Good morning. May it please the court. My name is Polly Estes and I'm here representing the appellant Mark Lazo who is acting in his capacity as relator on behalf of the United States government. I'd like to reserve six minutes for rebuttal. This is an appeal from an order granting a motion to dismiss with prejudice. And I think it's important to start by reminding you of the standard of review because the key issue here is should plaintiff have been allowed to amend his complaint. And this court has held that when looking at that the key issue is would it be futile to allow an amendment. And that is an issue that this court reviews de novo. Additionally, this court can consider additional facts and what can be pleaded in determining whether or not leave to amend should have been granted. Here, because I know that these cases frequently, you know, revolve around what could the plaintiff plead in the future if allowed to amend their complaint, we have drafted that proposed amended complaint and presented it for your honors consideration. It's attached to our request for judicial notice. One thing I'd like to say about the judicial notice is that appellees appear to think that we are asking this court to take judicial notice of the actual facts pleaded in the allegation. And certainly we realize you cannot do that. We are solely asking this court to take judicial notice of the fact that this is in fact the pleading that plaintiff will file if leave to amend is granted. Now that proposed pleading was not submitted to the district court in opposition to the motion to dismiss the fourth amended complaint. Is that right? That is correct. However, all of the changes that are made to incorporate this new complaint were explained in detail to the court at the hearing on the motion to dismiss. So it's not presenting any new facts or evidence that the court did not in fact hear. Counsel, what about, it does seem like between the third and fourth amended complaint, you know, it seems like that the district court judge here was a little frustrated with the fact that he had an opportunity to amend the third amended complaint and the fourth amended complaint didn't really seem to do any of these things. So I hear your points that, you know, the fifth amended complaint is really different and we told the judge it was going to be really different. But from the judge's perspective, got the third amended complaint, told them you're going to need to do some significantly different things and didn't really get those things in the fourth. So I can kind of understand where the judge would be a little frustrated about that. Okay, so let me talk to you about that. Because one of the things that's misleading in this case, you see, the first time that the complaint was amended, it was just to clarify some of the name changes and to substitute Mr. Lazo in for the Doe plaintiff. The second and third times it was amended, it was by stipulation with the other parties based on representations that they made as to who the correct defendants were. So the first adjudication of a complaint was the third amended complaint. Now the only issue that overlaps that the court had identified in the third amended complaint that's identified again in the fourth amended complaint is in fact the dates. Here you've got multiple entities. We're talking about several different construction projects and several different fraudulent schemes on each construction project involving multiple parties, multiple subcontractors, and the plaintiff here is not an insider. No answer has been filed. No discovery has been taken. But the plaintiff had done informal discovery and had sent out FOIA requests. The defendants in this case actually opposed those FOIA requests and sent letters stating that they should not be answered. Well, in order to know what invoices were presented when, there really needs to be discovery in this case or the FOIA requests needed to be answered. And they hadn't been. The plaintiff continued to try to find that out in order to clarify the dates. And he was able to obtain more information just before the hearing on the motion to dismiss the fourth amended complaint. And he detailed those dates in his finding at the hearing for the court. And that is found at the second volume of the excerpt of record, page 85, line 6 to page 87, line 8. So the dates were the only thing that was raised in both the third amended complaint and then in response to the fourth amended complaint. All the other issues were newly raised by the appellees in the fourth amended complaint. And those other issues, I think we have taken care of. There's the statute of limitations argument. There was one project that arguably was outside the statute of limitations argument. We've completely eliminated it. There are no, if you look at the fifth amended complaint, there are no projects that do not occur within the six-year statute of limitations. Similarly, the court asked if the Clark project was federally funded. And we clarified both at the hearing, and we'll do so in the fifth amended complaint, that yes, the Clark project was federally funded. And then there's one other issue that was mentioned both in the third and the fifth. How do we know that it was federally funded? How does the complaint say that it was federally funded? Or how do you propose to? It was funded by the U.S. Treasury. And so it states that in the complaint. And under this court's case law, that should be enough. Under IDA, which adopted the Fifth Circuit standard in grubs, that should be enough. And then there's the subcontractor table. If you take a look at page 27 of both the fourth amended complaint and the fifth amended complaint, there's a table. And up top in the categories, it says sub. And then down below, it lists six different or seven different subcontractors. Now, the district court, unfortunately, just simply misread that table and thought that it was talking about projects, not subcontractors. And the district court was unhappy because there are more than seven projects being claimed against. And so the district court didn't understand it. And that was all explained to the district court at the hearing. And that is found at the second volume of the excerpt of the record, page 125. So, and we have amended the fifth amended complaint to try to make it crystal clear that these are subcontractors. And so what about, you know, kind of along the same theme of, it just seemed like the district court judge was sort of losing patience here with, and I'm, you know, I'm sympathetic to that because here, I may not be remembering precisely correct, but I think there was a Sherman Act claim. And then the federal government came in and said, we're not authorizing him to bring a Sherman Act claim. And then in the fourth amended complaint, he put, he put a Sherman Act claim anyway, and it's a couple of new defendants and the court wasn't happy about that having not followed. I mean, is that, is there a basis for the court's frustration? Or I know this is a Sherman Act claim not in the fifth amended example that you've given us. So he seems to have finally got the message, but you could see where the district court judge would be losing patience. Well, the Sherman Act, the Sherman Act was mentioned, but the plaintiff had already dismissed that claim. I thought the Sherman Act claim was included in the fourth amended complaint. I don't think so. I think it's still the Sherman Act was being mentioned in order to emphasize that they're, he's trying to give a flavor for what types of conduct are going on here. And the fact that the conduct is in fact also anti-competitive, but certainly it would, it is, has been taken out of the fifth amended complaint. And again, I just want to direct the court's attention back to its own cases of Schneider versus California and Chang versus Chen, where this court has said that essentially the focus, the legal question is not, could a mistake have been corrected earlier? The focus is on if allowed to amend their complaint, can the plaintiff cure the defect? Ms. S, just let me ask you this. Is that the only consideration, whether or not they can cure the defects that we need to consider? What about the district court's other determinations? So you could say that there's some confusion in the case law because some cases quite heavily rely upon solely can the complaint be amended, right? And then you've got the case which goes through five potential factors. And here the court found two of those factors. The court said, well, I think there's been undue delay and prejudice to the defendant. So I'd like to address each of those in turn, if I might, right quick. As to undue delay, this court held in Jackson that undue delay occurs when the plaintiff knew or should have known the facts that in the, at the time of the original pleading, that it's now seeking to add to the amended pleading. But, and the district court cited Allen v. City of Beverly Hills in support of its finding of undue delay. But in Allen, the plaintiff was suing for having been fired, unlawfully terminated, they allege, by the city. They knew all the relevant facts and what had already occurred at the time of the original pleading. Here, you've got multiple construction projects over several periods of years, multiple subcontractors, several different fraudulent schemes, and our plaintiff is not an insider. So he's having to rely upon informal discovery at this point because there's been no actual discovery in this case. In fact, an answer hasn't even yet been filed in this case. And he did submit FOIA requests, repeatedly, to attempt to gain the specific information that the district court wanted, most notably the dates. And yet, those requests were not answered by the government. So, until just before the hearing. So he finally got the information just before the hearing by going around talking to a bunch of subcontractors. So, so there hasn't been any undue delay from that standpoint. Secondly, if you look at prejudice, prejudice is said to exist under this court's case law. Where allowing an amendment would either nullify prior discovery or place an unnecessary burden on future discovery or require the relitigation of a previously decided suit. And that's from Jackson versus Bank of Hawaii. None of those instances apply here. There's been no discovery in this suit. And we're not going to be relitigating some sort of previously decided suit. So that standard just simply doesn't apply to this case. So, in any event, your whole position, argument is that the futility consideration is the most predominant or most concerned. And that here, you believe you could amend the complaint to address the district court's concerns. Correct, Ron. Why don't we hear from the other side? You wanted to save some time for rebuttal and you're down to one minute and ten seconds. Can I ask one? Judge Gorman has a question. Go ahead, Judge Gorman. I want to go, I want to go over, first, what evidence is there that he, for allegation, that he actually filed a claim with the federal government that was false? Well, the federal government, in the record, you'll find that the federal government did weigh in and say, we recognize this is a valid suit, but we're not going to prosecute it. And so he has permission to prosecute in our stat. No, no, but I understand what the federal government says, but what I'm asking you is what evidence is there that he, can you allege, in effect, that he actually filed a claim with the federal government for money and that that claim was false? That issue was decided by the district court judge, who held that it was a false act claim as defined by the FCA. You've got, as far as evidence, I don't know what a false claims act, I'm asking you a specific question. I'm sorry, I don't seem to be understanding. My specific question is, what evidence is there that he actually filed a claim with the federal government for money that was false? Well, our plaintiffs did not do that, but the defendants did, and what we will be presenting at trial, there are many... Oh, that's what I meant, I didn't mean your client. Okay, when you said he, I was a little confused. I apologize for the confusion. So, we've got invoices that show that they are false and that they are double billing. With whom were they filed? They were sent to the relevant federal agency, which hired VCC to construct the project. They were actually filed by the defendants with a federal agency and they were asking for reimbursement. Correct, correct your honor. And in what way were they false before us? They were false because they fall within one of the fraudulent schemes as alleged in the complaint. And the district court looked at those false schemes allegations and did find that they were valid allegations of fraudulent schemes. And can I ask you one last question? In your proposed Fifth Amendment complaint, you talk about NBEA certifications requirements established by the Southern California Minority Supplier Development Corporations, which I understand is a private membership corporation, and he made false statements to them. And I don't even know that they certify anybody, at least looking at using Google. I don't know that they actually certify. They act as a kind of a facilitator to try and help businesses, but they don't actually certify. Are you claiming that making a statement to the Southern California Minority Supplier Development Council, I wish the acronym was smaller, is a false statement within the False Claims Act? Yes, we are. And even though they're a private corporation, they're not a federal agency? They're not a federal agency, but it's all a part of the scheme to gain a federally funded project and to have that be awarded. You see, the government intended to help small minority businesses who could otherwise never compete. There was a separate statute that deals with minority set-asides, and you claim that that was violated too, but I'm not talking about that one. I'm talking about this SCMFDC. They're not certifying anybody, and a false statement to them is not a violation of the False Claims Act, is it? Well, I think it is because it's a part of the overall scheme to fraudulently state that they meet the qualifications to get this federally funded project, if that makes sense. It's one of the many steps, even though they're a private entity that's helping out the federal government by taking a look at whether or not the requirements for an MBE are met. Okay, thank you. All right, Ms. Henson, let's hear from the other side, and then I'll give you a minute or two for rebuttal. Thank you. Ms. Jones, go ahead. Thank you. May it please the Court, before I get to the substance of my argument, I need to correct the record on questions that Relators Counsel just answered. One, on the Sherman Act claim, it was absolutely a count in the Fourth Amended Complaint. It remains a count, count three, in the proposed Fifth Amended Complaint. The proposed Fifth Amended Complaint is found at your Court's docket at page 20, or, excuse me, at docket entry 20. And if I could direct your Honor's attention to page 83 of 88 of the Request for Judicial Notice, you will see count three, which is for violation of 15 U.S. Code 1, which is, in fact, the Sherman Act. You will also see, in the proposed Fifth Amended Complaint, Mr. Lazo is seeking to reinstate claims against Defendants Glenn and Golden that he improperly added in violation of the District Court's order granting leave to amend. Second, we heard Mr. Lazo's counsel- I thought he agreed in the District Court to withdraw the Sherman Act claim. Yes, your Honor, he did, and apparently has not, because it once again appears in the Fifth Amended Complaint. Now, in terms of what he wants to do? Correct, your Honor. And that would be some evidence of a lack of good faith, I assume. Yes, your Honor, that's exactly why I raised the issue. Second, you heard Mr. Lazo's counsel repeatedly state that he is not an insider. This is an argument that they have advanced since moment one, that somehow Mr. Lazo is entitled to leniency or more time because he is not an insider, which is the intended purpose of the False Claims Act. Of course, we know from this Court's decision in the Abebe case that while outsiders are not prohibited from bringing False Claims Act claims, they certainly are not entitled to leniency under the pleading standards. So, counsel, can I ask you about that real quick? That makes sense to me, and I have some sympathy for your point that the fact that he's an outsider and seems to believe that I need to get discovery, either formal or informal, in order to actually figure out what they did wrong. I just know they did something wrong, but I don't know what. I've got to figure it out. It does seem like in some ways that would counsel in favor of at least deference to the district court judges saying, no, we're not going to let you keep doing this. If you don't know, you don't know. But is there any case law that says you generally grant leave to amend? Is there any case law that would say that, yeah, but that general standard of generally granting being generous with leave to amend should be looked at differently because of what you were just talking about, the fact that an outsider can't engage in a fishing expedition? Your Honor, I am not aware of any case law that gives an outsider special latitude in seeking to amend the complaint. I'm asking about the other way. Is there any case law that says that if they're an outsider, you have a little less sympathy for – it's kind of intuitive that if they're an outsider, you're like, no, you don't seem to know what's going on here. You're just fishing, hoping to find something. But is there any case law that makes that concrete in the context of what you do with dismissing with prejudice or not? Yes, Your Honor. I refer the Court's attention to the UnitedHealthcare case. And this is a quote that I think resonates in this case in particular, is that the application of Rule 9b in the False Claims Act context, that rule serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the Court, the parties, and society enormous social and economic costs absent some factual basis. By requiring some factual basis for the claims, the rule protects against false and unsubstantiated charges. So to put that in the context of the district court judge's evaluation of whether to grant leave to amend or not, or whether to dismiss with prejudice, would you put that in the prong of prejudice to the defendants? Basically, we've already been harassed for five amendments. Six is too many. Is that where that fits, that concern?  It fits both in prejudice and in undue delay. When we're talking about prejudice, these are the two of the five Fallon factors that Judge Selna found. Obviously, he also found futility, but we'll turn to that in a minute. When Judge Selna found prejudice, he found it not just because of an assumption or because he presumed it. He found it because the defendants presented actual evidence of the harm being caused to their business by the prolonged pendency of a lawsuit alleging very serious allegations of fraud on the federal government. And that ties into the UnitedHealthcare language of the harm that comes from being the subject of fraud charges. The second piece that the UnitedHealthcare decision, the language of why 9B is so important in the False Claims Act context, that relates to the undue delay. And that's what we see here, is that Mr. Lazo, contrary to his Rule 11 obligations, filed a complaint without a factual basis. And has been searching, right? We just heard that. Has been filing FOIA requests and doing all kinds of things since filing the complaint, trying to see if it's a factual basis. And all the while, arguing to the court, well, I haven't had a chance for discovery yet. The filing of a False Claims Act claim serves to deter the filing of complaints as a pretext for getting to discovery and figuring out whether he actually has complaints. So, what I wanted to come back- Your Honor, counsel here, it's been, what, a year and a half since filing the initial complaint? Is that a little longer? Your Honor, it was a year. The original complaint was filed in February of 2018. The district court's opinion- It doesn't seem, I mean, I can understand from the perspective of a company that a couple years seems a long time. But, you know, maybe I've been doing law for too long. That doesn't seem super long, you know? It seems like some of these key TAM things can drag on and on. I hear your point on undue delay, but it doesn't seem super long. I appreciate Your Honor's point. The district court considered that point and found prejudice in favor. That prejudice did, in fact, weigh against leave to amend. And I would suggest that when your client is a federal government contractor who has a publicly filed suit against it for fraud on the federal government, it finds itself routinely in the position of having to explain to its customers and prospective customers of why it believes that the case has no merit, and they should do business with them anyway. And we presented a declaration to this effect to the district court, which formed the basis of the prejudice finding. The sole issue before this court today is whether the district court abused its discretion in denying the relator leave to file a Fifth Amendment complaint. The court, the Ninth Circuit in Allen, gave district courts a roadmap for when, as a matter of law, they can say enough is enough and deny plaintiff leave to amend. Here, we can see the district court carefully considered the Allen factors. It gave notice to the parties in its tentative ruling that it was considering the issue of whether to grant leave to amend. It held oral argument on the five factors, bad faith, undue delay, prejudice to defendants, futility, and prior amendment. Obviously, there were prior amendments, but the court also found prejudice, undue delay, and futility. Given that not all of the Allen factors have to be satisfied in order for a case to be dismissed with prejudice, that decision was not an abuse of discretion. Relator, in its briefs and in its argument, as Judge Paez pointed out, is effectively trying to convince this court that it should reverse the district court's decision based on futility alone. But this court announced, the Ninth Circuit announced, a five-factor test, not a one-factor test. And futility was only one of the reasons that the district court denied leave to amend. This court, it's our position that this court can affirm on the basis of prejudice and undue delay alone. It's very important to note that futility is not the most important of the five Allen factors. Relator concedes this in his opening brief. If you look at page 19 of the Relator's opening brief, he states, relying on the Ninth Circuit decision in eminence capital, that, quote, importantly, it is the consideration of prejudice to the opposing party that carries the most weight. Here, based on the evidence that I described, the district court correctly found prejudice. In addition, under the relevant case law, it holds that a defendant can be prejudiced by repeated amendments to a complaint that require the defendant to expend time and resources. Ms. Jones, just moving off of prejudice for just a moment, because your time is almost up and I need to move on for the day. Let me ask you this. You know, it's a little bit unusual to see a motion for judicial notice for our court of a proposed, here it's a Fifth Amendment complaint. We just put aside that document for a minute and look at what happened at the hearing before the district judge when there was discussion about what kind of amendments would be made. Were the proposed offerings and the proposed amendments that were offered to the district judge sufficient to address the district court's concern with respect to what he said back on the Third Amendment when he dismissed the Third Amendment complaint? No, Your Honor, they weren't. If you do a comparison of the Fourth and the proposed Fifth Amendment complaints, you see that all that was added was some details and the dates of the project. Judge Selma's concern was when did the fraud occur? The dates of the projects and a conclusory statement that all six of the schemes were going on all the time throughout the duration of all the projects, that doesn't satisfy the 9B standard. It doesn't satisfy the 12B6 standard. So, no, the Fifth Amendment complaint doesn't come anywhere near satisfying the standard for stating a False Claims Act case as a matter of law. In some ways, counsel, your argument, I think, is paradoxically that the motion for judicial notice actually works to your favor because we're not left to speculate about what they would file, and you're saying it doesn't meet it. If the court were willing, obviously we oppose the motion for judicial notice, but for the sake of argument, if the court were to consider the Fifth Amendment complaint, if you pick it up fresh and engage in a de novo review, you can see that this will result in another successful motion to dismiss by the defendants. You can see that it doesn't answer the most basic questions. We heard those questions from Judge Selma. What I was concerned about is the district judge asked, how would you amend the complaint? And he offered his proposals, and my question is, what was offered, was that sufficient to address the district court judge's concerns at the hearing? No, the answer is no. The dates of the project were not the district court's only concern. One of the other major concerns of the district court was the dates that the schemes actually took place. The False Claims Act penalizes false claims to the government. When were those made? The complaint doesn't answer that question. And he was never able to articulate at the hearing information that would satisfy the judge's concerns. Is that right? That's correct. And finally, I want to take head on the notion that this was somehow Mr. Lazo's first failure to cure these deficiencies. It most certainly was not. Well, technically, this was his first disregard of an explicit roadmap provided by the district court. Mr. Lazo has known since March of 2019, when defendants filed the first motion to dismiss the first amended complaint, that defendants were arguing that his pleading was insufficiently specific, that it didn't state the who, what, where, when, and how of false claims. We filed a total of four motions to dismiss. Every one of them, all of which are in our supplemental record, every one of them raised the question of what are the basic facts underpinning this False Claims Act claim. He knew exactly what we were going to argue, and he didn't cure those deficiencies. But those deficiencies, you didn't win on those grounds when you raised them the first time. I mean, this went through, it's hard to keep track of all this on my mind, but, you know, it seemed like the most significant document was the fourth amended complaint. And the district judge identified, he seemed to satisfy what the district judge said was lacking in the proposed fifth amended complaint. You say it's not enough. I think the fifth amended complaint could just have been the same thing. It's part of his brief. He could have said in his brief, this is what I would have alleged. So I don't think we need to spend a lot of time on that. But did he, did he, did he, in effect, cure, provide the information that the district judge thought was lacking, told him was lacking? Not at all, your honor. All he added, in significant respect, was the dates of the projects. He tried to clarify a chart that makes no sense to me to this day. A few other details here and there. A conclusory allegation that your honor picked up on about SLARC being federally funded, it was not. And the fundamental questions that Judge Selma had, that we have had since our very first motion to dismiss, remain unanswered. What basis is there to conclude any of these projects are federally funded? What federal agency was involved in any of these projects? Who were the contracting parties? Who were the contracts between? What work did the defendants do? What was their role on any of these contracts? What work did they do? What work did they submit claims for? What claims, or what claims did they cause to be submitted? If there was an MBE requirement, what was the source of that requirement? What federal program? We all know there's dozens of them. And what was false about any particular claim for payment made to an unidentified federal agency? I understand what you're arguing, and I think there's a lot of merit to it, personally. But was he given notice that this is what he should allege with particularity or more particularity in a Fifth Amendment complaint? Was the only notice that he was given notice about the business of time, which I'm using as a shorthand, but you know what I mean. Sure. This argument was no surprise to Mr. Lazo. Every one of our four motions to dismiss made these arguments. I agree with that. But the question is, did the district court judge, you know, the district judge says, there's defect A. That's your problem. He says, I cure defect A. And then now there's defect B. But the district judge didn't tell him about defect B. And so in a normal situation, you would say, I mean, normal without all of the other complications in this case, which I'm totally sympathetic to the district court. But normally you would say, let him replead because the district court judge didn't tell him that he needed to do that. I'm not even suggesting that you're wrong at the moment, but let's assume you're right. But do we make the judgment on this court, on this appeal about futility of what I call claims to the federal FISC? Or should he be allowed to amend and let the district court do that? Your Honor, as I'm being clear, you are. And Mr. Lazo was on notice of deficiencies from Judge Selna's opinion that he did not. He did not satisfy in the Fifth Amendment complaint. But in particular, when did these schemes actually occur? No, but that's the time. I understand that. That's with respect to the time. I'm talking about the federal FISC argument. The judge didn't tell him, you know, there's something wrong with your out. There's no proof. You haven't submitted any proof that he filed any claim with any federal agency. To which, by the way, there may be merit to that. What I'm suggesting is that the district judge didn't say, this is why I'm tossing it. This is why there's something wrong. And so he wasn't on notice, at least from the district court, that he had to plead that.  That's a fair question, Your Honor. And the good news is this court can ask those questions. Futility is a de novo review, as Mr. Lazo's counsel points out. And this court can affirm the district court's decision on any basis, particularly with respect to futility. Whereas I suggested Your Honors can pick up the Fifth Amendment complaint and decide for yourselves whether it would survive another motion to dismiss. But what I'm saying to Your Honors is that you don't need to do that. You don't even need to get there. Because Judge Selna correctly found both prejudice and undue delay. And those factors, which are reviewed for an abuse of discretion alone, are sufficient to justify a dismissal with prejudice. Okay, all right. Why don't we take it there and hear from Ms. Estes. I'll give you two minutes for a rebuttal, Ms. Estes, and that's it. You're on mute. Okay. Thank you, Justice Bias. I'd like to point the court to two cases which I think might answer many of the questions which have been asked here. First is United States Ex Rel Swoban versus United Healthcare. There, this court recognized that although the plaintiff had made three prior amendments to the complaint, this was the first time the defendant's issues with the particular complaint were adjudicated. And so the plaintiff deserved another opportunity to amend. And that's exactly the case that we have here. In the prior amendments, by the way, the defendants had stipulated to the amendments. If they still had questions, if they still had issues with our proposed amendments, they shouldn't have stipulated to them. Secondly, also in Swoban, and why I think this case is so much like Swoban. In Swoban, again, when things occurred was at issue, right? And counsel seems to be implying that at this stage of the proceedings, we have to produce each invoice to say exactly when the fraud occurred. Well, it occurred when the invoice was presented. But we obviously don't have those invoices yet because no discovery has taken place. But in Swoban, the court was looking at a proposed complaint that said that the fraud had occurred, quote, between and during about 2005 and about 2007. And then in another fraudulent scheme, it said during or after June 2008. Here, we have been vastly more specific. We're giving the month and date when each one began and when it ended. And in some of them, we were actually able to specify the specific day. So I think we've definitely met this court's level of specificity. Okay, thank you, Ms. Estes. We're over time. Okay. We appreciate your argument. We appreciate both sides' arguments this morning or this afternoon. And with that, we will submit the case for decision. Thank you very much. Thank you.
judges: Paez, Korman, Vandyke